Opinion delivered July 2, 1951.

Rehearing denied October 8, 1951.

*Reinberger & Eilbott* and *Sid J. Reid,* for appellant.

*Ike Murry,* Attorney General, and *Jeff Duty,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. At Monticello Brooks Willis contracted to build a house for Calvin Miller for $4,400. Willis sublet to Herman Schultz for $3,400. Schultz was to furnish all labor, lumber, paint, and incidental necessities other than plumbing, light fixtures, and wiring. Willis was to supply and install the excepted items.

From time to time Willis made payments to Schultz, but did so only when emphasis was placed upon Schultz's duty to keep all bills paid, to the end that the property would not be subject to liens for labor and materials. Schultz, according to Willis, gave repeated assurances that the accounts were being cared for as they accrued. Finally, with completion of the building, Schultz was due an apparent balance of $370 and asked Willis for a check in full settlement. Willis testified that before making the payment he asked Schultz if there were any labor or material bills and was told in the most positive language that nothing was outstanding. In speaking of these assurances Willis testified: "When the work was completed January 9th, 1950, [Schultz and I] sat right in

front of the house and talked the thing over and he swore to me that everything was paid up and was in the clear, and he was very anxious to get his money right then.''

Aggregate unpaid bills were $1,076, for which Willis became liable. Some had been paid by him at the time of trial. The defendant objected to introduction of statements from supply sources because the bills were made out to Schultz, although Willis testified they were given to him by the creditors as evidence of default accounts incident to the construction. It was also objected that bills less than ninety days old could not be shown (Ark. Stat's, § 51-613) because they were the individual obligations of Schultz. Insistence was that the injured party's remedy is to be found in § 51-601 of the Statutes.

Whether Schultz told Willis that all bills had been paid, and whether—if he did give this assurance—the purpose in misrepresenting an existing fact was to induce Willis to pay the relatively small balance then shown by Willis' books,—these were questions the jury decided against the defendant's contrary contentions. The appeal is from a penitentiary sentence of one year.

Insisting that his only purpose in asking for the check was to collect a just debt, as distinguished from a purpose to defraud, appellant thinks the Court should have directed a verdict in his favor. He cites *Woodruff v. State,* 61 Ark. 157, 32 S. W. 102. Substance of Special Justice WINCHESTER's opinion in the Woodruff case is that in order to convict it must be shown that the defendant made the representations with an actual intent to defraud. Whether the intent was an element of the act was a factual question for the jury.

In the case at bar the issues were clearly presented in Instruction No. 3. It required, as a condition precedent to conviction, that the jury should find beyond a reasonable doubt (a) that Schultz, . . . by false statements, . . . obtained Willis' signature to the check: (b) that at the time of making such statements Schultz knew they were false, and (c) that by virtue of such representations, if false, the defendant obtained $370 on the check. See Ark. Stat's, § 41-1901.

Defendant's second assignment as urged in his brief is that the Court erred in refusing to give requested Instruction No. 2. In effect it would have told the jury that if, when Schultz received the final payment, Willis was justly indebted to him "in that amount, then . . . you can not convict [Schultz], . . . for he would not be guilty of false pretense in collecting an honest debt irrespective of the representations used."

The effect of this instruction would have been a judicial declaration that the apparent balance of $370 was not affected by the accused's failure to pay the outstanding accounts.

Our view is that the Court correctly declared the law and that there was no error in refusing the requested instruction.

Affirmed.