Joyce COPE *v.* STATE of Arkansas

CR 87-104                                         739 S.W.2d 533

Supreme Court of Arkansas
Opinion delivered November 16, 1987

*Sloan & Sloan*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Joyce Cope was convicted of raping her two daughters. One was 6 and the other was 12 years old. Mrs. Cope was sentenced to 40 years imprisonment on each count, to be served consecutively. On appeal she claims she did not voluntarily confess, the court erred in permitting a videotape of her daughters' testimony to be used and there was insufficient evidence of the two rapes. We find no error and affirm the judgment.

First, we consider the questions raised regarding her confession. Her main argument is that she did not knowingly and intelligently waive her rights. The rights form which Cope signed is identical to that in *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1983). It does not say "I expressly waive my rights. . ." After enumerating the *Miranda* rights, the form simply states:

> Do you understand that you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire?

*Fleming* criticized the use of such a form and we stated:

> We strongly feel that a form used to support the state's contention that an accused knew and waived his rights should contain express language to that effect.

Regardless of our statement in *Fleming*, the law is clear that the failure to obtain an explicit waiver of rights does not necessarily preclude a voluntary confession.

In *North Carolina* v. *Butler*, 441 U.S. 370 (1979), the court said:

> Ten of the eleven United States Courts of Appeals and the

courts of at least 17 States have held that an explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case. By creating an inflexible rule that no implicit waiver can ever suffice, the North Carolina Supreme Court has gone beyond the requirements of federal organic law. It follows that its judgment cannot stand, since a state court can neither add to nor subtract from the mandates of the United States Constitution.

Our recent decision in *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987), makes the same holding. In this case the trial judge, after hearing considerable testimony by the officer and the appellant, found the confession voluntary, and we will not overturn that decision because of the rights form used.

The appellant makes two other arguments about her confession. First, she says the judge did not properly consider her vulnerability in determining her confession was admissible. *See State* v. *Graham*, 277 Ark. 465, 642 S.W.2d 880 (1982). Cope argued she was vulnerable because she had never been exposed to the criminal justice system, had spent her first night in jail and faced "intense interrogation." The record does not support Cope's argument. She was 37 years old when she was arrested. She had completed the eighth grade and had been taking classes to obtain her GED. She was read her rights twice: the day she was arrested and the following day before she was given a polygraph test. Officer Beall stated the appellant indicated she understood what her rights were. Cope made a statement to the officer after she had submitted to the polygraph examination. There is no evidence of intense interrogation. She was only with the officer an hour and ten minutes before she confessed to raping her daughters. She admitted she was not threatened or abused. It was a routine interrogation.

Second, it is argued her confession was coerced because she did not "knowingly, voluntarily, and intelligently" confess. During the *Denno* hearing, Cope stated, after the polygraph test, she did not know what it meant to waive her rights. She said Officer Beall told her that Ray (her husband) "wasn't going to take all the blame for what had been going on." See *Cope* v. *State*, 292

Ark. 391, 730 S.W.2d 242 (1987). (Ray Cope's rape convictions were affirmed on appeal.) She also stated that the officer told her it would help her if she told him what had happened. But she admitted Officer Beall did not tell her what to say. He did not promise to do anything for her if she gave him a statement, nor did he tell her he would help her with the charges. Furthermore, he did not tell her of what the girls had accused her. (Appellant's confession, however, corroborated the girls' testimony of how they were sexually abused.) Appellant stated she made the statement to get the officer "to back off and, you know, leave me alone. I had had enough." There was no testimony that the appellant had been physically abused or threatened. *See Colorado* v. *Connelly,* 107 S.Ct. 515 (1986); *Munnerlyn* v. *State,* 292 Ark. 467, 730 S.W.2d 895 (1987).

██ The trial judge was undoubtedly influenced in his decision by the demeanor of the witnesses. It was his responsibility to determine which witness was credible. *Duncan* v. *State, supra.* We cannot say the trial judge was clearly wrong in finding that appellant understood her rights and knowingly and intelligently waived them in making her voluntary statement. Considering the totality of the circumstances, we find the confession voluntary. *Duncan* v. *State, supra.*

█ Appellant argues it was error for the trial judge to allow the state to use videotapes of the two daughters' testimony rather than requiring them to be present at trial. If "good cause" is shown, such a procedure is permissible. Ark. Stat. Ann. § 43-2036 (Supp. 1985).

A social worker, who had worked with the children, testified that it would be in the best interest of the children, who had been subjected to considerable abuse, to allow them to testify before a small group rather than at trial. She testified that if the girls thought there were several people present who knew what had happened to them, it would "embarrass them and upset them." Significantly, she testified that when the girls talked about being abused, their therapy suffered, their attitude and behavior regressed, and their sexual acting out increased. The girls were placed in separate foster homes to prevent them from acting out sexually with each other. The social worker thought it would be less harmful for the girls to testify before as few people as

possible.

In *McGuire v. State*, 288 Ark. 388, 706 S.W.2d 360 (1986), we held the trial judge has considerable discretion in determining if a video taped deposition can be used. We said:

> Many factors can and should be considered in determining what is good cause. The circumstances surrounding the offense, the child's age, and the potential harm to the child would be a few of these factors.

The trial judge made a finding of good cause, and, in view of the girls' ages, the sexual abuse they had endured, and the social worker's testimony, we cannot say he abused his discretion.

Finally, the appellant argues that the evidence was not sufficient to support the convictions for the two rapes. Both daughters explained in detail how their mother penetrated their sexual organs with her fingers and foreign objects. While there were inconsistencies in their testimony, these were for the jury to resolve. *Ellis v. State*, 279 Ark. 430, 652 S.W.2d 35 (1983).

The appellant also contends that the evidence was insufficient to support the conviction of the rape of her younger daughter, because the daughter's testimony was not corroborated. Corroboration is not required. *Cope v. State, supra.*

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I do not believe the appellant's confession was voluntarily given because the record discloses that she did not knowingly and intelligently waive her Fifth Amendment right to remain silent. She was tricked into making the inculpatory statement by an expert. I do not rely entirely on the lack of an express waiver in the rights form as the basis for this dissent. The majority correctly holds that it is not an absolute requirement that a waiver be written or expressed. Without a doubt a proper written waiver would be most helpful. I can think of no valid reason why the state police should not use a proper form in such matters. Several years after the statement in *Fleming v. State*, 284 Ark. 307, 681 S.W.2d 390 (1983), there is still no evidence of change. Such change would save time and expense to the police and the courts. An accused does not waive

his rights merely by having them explained to him.

The appellant was thirty-seven years of age and had not completed high school, although she had twice tried to obtain a GED. This was her first encounter ever with the law. She had been held in jail overnight before being hooked up to a polygraph machine for testing. The results of the test, even if incriminating, would not have been admissible. After completing the test and finding it to be inconclusive, the officer did not reveal the results to her, but rather told her that her husband had been man enough to give a written statement and come clean about the matter and she ought to do likewise. The officer admitted it was routine to act disappointed if the tests were inconclusive. This gives him a psychological advantage, especially over uneducated and inexperienced persons. He stated his purpose well when he said, "I felt it was my job to get that statement from her that day." When it is considered that her husband had confessed and in doing so had exonerated her, and she had previously maintained her innocence, it becomes clear that the police had overreached their authority in order to obtain the written confession. A confession was the state's only hope at this point of the case.

The court allowed videotaped depositions upon the word of a social worker that she felt it would always be easier for children to testify by videotape. No doubt it would. The same statement would apply to about ninety-nine percent of all witnesses. There was no reason given other than it was in the best interests of the children. "Many factors can and should be considered in determining what is good cause" to take video depositions. *McGuire v. State*, 288 Ark. 388, 706 S.W.2d 360 (1986). The legislature might as well have left the words "for a good cause shown" out of the statute if it is entirely up to the prosecutor, or a social worker to subjectively decide whether to take videotaped instead of live testimony. These children told a lot of conflicting stories and did a goodly amount of "acting out" sexual acts even after they were in foster homes. They said it just came naturally. They should have been subjected to the same procedures of confrontation as any other witnesses.

I would remand for a new trial.