473 So.2d 172 (1985)
O.L. RAINER, Jr.
v.
STATE of Mississippi.
No. 54757.
Supreme Court of Mississippi.
July 17, 1985.
*173 Michael B. Holleman, Boyce Holleman, Gulfport, Raymond D. Swartzfager, Jr., Laurel, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
O.L. Rainer, Jr. was convicted in the Circuit Court of Jones County for shooting into an occupied dwelling, was fined $2,500 and was sentenced to five years imprisonment. He appeals that conviction and sentence. We reverse and remand for a new trial.
O.L. "Blue" Rainer, Jr. operates a package liquor store in Laurel. Adjacent to this store is a building also owned by Rainer. At the time of the incident that spawned this case, Rainer was renting this building to James Davis, who operated a pawnbroker's shop. On July 9, 1982, Rainer and Davis had a heated argument about Davis' daughter, whom Rainer had fired from her job at the package store the previous day. There was testimony that Rainer ordered Davis to vacate the premises. Later that day, someone fired several shots at the pawn shop from a partially opened door at the rear of the package store. No one was injured.
Only two people claimed to have witnessed this incident. One was a worker in a nearby office, who testified that he saw an arm extended from the package store firing a pistol. He could not say whose arm it was. The other was Albert Earl Jackson, whose inconsistent testimony provides the principal basis for our reversal.
Jackson frequented the area around the two stores and was known to both Rainer and Davis. After the police arrived at the scene of the shooting, they interviewed Jackson, who gave them a sworn statement that he had seen Rainer fire the shots. On September 15, Jackson was interviewed by Benjamin Graves, a private investigator employed by the defense counsel. He gave Graves a sworn and notarized statement that he did not know who had fired the shots. This statement was admitted into evidence at the trial. However, during the trial, Jackson gave testimony implicating Rainer, whereupon defense counsel impeached him with his prior inconsistent statements to Graves and the Grand Jury. Jackson admitted on the stand that on his first appearance before the Grand Jury, he had professed ignorance of the shooter's identity, but that he went back and changed his story after police officials warned him of possible perjury charges against him. Jackson's employer testified that Jackson had told him he didn't know who fired the shots.
Jackson explained the constant changes in his story by asserting that he feared Rainer would harm his wife and children. Defendant, in his motion for a new trial, produced affidavits tending to show that Jackson was not married and had no children. In denying the motion, the learned trial judge noted that some people who form unofficial sexual alliances still think of their partners as wives. No doubt this is true, but it misses the point. The question is not whether Jackson's statement could be true in some sense, but whether it had a tendency to confuse and mislead the jury. We think that it manifestly did.
In any jury trial, the jury is the arbiter of the weight and credibility of a witness' testimony. Williams v. State, 463 So.2d 1064, 1069 (Miss. 1985); Warren v. State, 456 So.2d 735, 738 (Miss. 1984); and Browning v. State, 450 So.2d 789, 791 (Miss. 1984). This Court will not set aside a conviction without concluding that the evidence, taken in the most favorable light could not have supported a reasonable juror's conclusion that the defendant was guilty beyond a reasonable doubt. Williams, supra, at 1068; May v. State, 460 So.2d 778, 781 (Miss. 1984); and Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984). We are convinced that this is one of those rare occasions.
*174 It is clear from the record that Rainer's conviction was chiefly supported by the testimony of Jackson. No other witness implicated him directly. The physical evidence proved only that someone had shot at the pawnshop; Davis had quarreled, not only with Rainer, but with his two sons.
Jackson's conduct in this affair speaks for itself. We think it would be unconscionable to allow a citizen to lose his liberty based upon the practically unsupported testimony of this witness.
Moreover, we note that the jury received no cautionary instruction regarding Jackson's testimony, and that four defense instructions relating to the issue were refused, because the trial judge feared that granting them would invade the province of the jury. Such concern is certainly praiseworthy. Yet judges should not, in their zeal for preserving the jury's independence, go so far as to leave it without adequate guidance. If the instructions submitted by counsel are deficient, the trial judge can and should instruct the jury on his own initiative. He need not wait passively for the attorneys to supply instructions for him. Newell v. State, 308 So.2d 71, 78 (Miss. 1975).
Finally, an additional matter casts a shadow over the verdict in this case  the allegation of jury tampering. It was alleged that Davis had obtained a list of the jurors and tried to contact them before the trial. On motion for a new trial, the trial judge held a hearing on this matter, and found that the list of jurors had not been compiled at the time Davis was supposed to have obtained it, and that none of the jurors had been actually contacted. A close reading of the record, however, reveals that the defense witnesses could have referred to Davis' having the list the week it came out rather than the week before.
The case before us involves questionable testimony, possible perjury, inadequate instructions and the possibility of illicit attempts to influence the jury. Any of these matters alone would have been cause for grave concern. Together, they seem to us to have deprived Rainer of his right to a fair trial. Because of the accumulation of improprieties below, Rainer's motion for a new trial should have been granted. We reverse and remand for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, and SULLIVAN, JJ., concur.